UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**WANDA WILLIAMS, individually and
as temporary guardian and temporary
conservator for JOHN ROBERT
WILLIAMS, JR., incapacitated,           PLAINTIFFS**

**VS.                          CIVIL ACTION NO. 1:14-CV-383 HSO-JCG**

**MANITOWOC CRANES, LLC; and
CAIRO MARINE SERVICE, INC.            DEFENDANTS**

**MEMORANDUM BRIEF IN SUPPORT OF MANITOWOC CRANES, LLC'S
RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO
EXCLUDE DR. JOHN SCHNEIDER'S PROPOSED EXPERT TESTIMONY**

Defendant, Manitowoc Cranes, LLC ("Manitowoc"), submits this Memorandum Brief in support of its Response in Opposition to Plaintiffs' Motion to Exclude Dr. John Schneider's Proposed Expert Testimony, and states as follows:

The Plaintiff, John R. Williams, Jr. ("Williams"), seeks to exclude Dr. John Schneider's expert testimony on the basis that it violates the collateral source rule and that this Court has previously excluded him. This case is distinct from the exclusion of Dr. Schneider in *Sartin v. Wal-Mart Stores East, L.P.*, 1:14-cv-003-HSO-RHW (S.D. Miss. 2015) for two reasons. First, the undisputed facts in this case distinguish it from *Sartin*. Second, since this Court's ruling in *Sartin*, the Mississippi Supreme Court has strengthened its position that defendants have a right to challenge the reasonableness of medical bills and specifically allowed the type of discovery that Manitowoc undertook in this case.

One of Williams' own medical providers has confirmed the basis upon which Schneider's opinions are premised, which is that <u>no patient pays the amount charged by medical providers</u>, regardless of whether that patient is insured or uninsured. The Shepherd Center, Inc.'s representative, Ms. Jennifer Dennard, readily admitted that "nobody be [it] uninsured or

163647.8

insure[d] [patients] actually pays the full charged amount" and "in fact, the hospital doesn't expect to receive the full charged amount." (Dennard Depo, 37).[1] Based on her 20 plus years in the billing and collection industry, Ms. Dennard confirmed that it "is common that medical providers bill more than -- charge more than they expect to receive."  (Dennard Depo, 37-38). This goes hand-in-hand with the premise of Dr. Schneider's expert opinion that there is a "long tradition in the U.S. medical industry of providers submitting bills and charges for services rendered, but accepting much less than those amounts in full satisfaction of those bills." (Schneider Report, ¶ 2.2).   Therefore, Dr. Schneider's opinions are premised on independently verified medical industry practices and should be allowed to challenge the reasonableness of admittedly inflated medical bills.

## ARGUMENT

Williams' challenge to Dr. Schneider's report and testimony is based solely on the collateral source rule.  He concedes that Dr. Schneider's opinions meet the other requirements of FRE 702. In this case, Dr. Schneider's opinions are supported by the undisputed testimony from the Shepherd Center that the "total charges" amount reflected in its bills are: (i) not an amount it ever expects to receive in payment from <u>any</u> patient; and (ii) created with the expectation that it will be written down or adjusted, even for uninsured patients.  Based on these undisputed facts and Mississippi law, Dr. Schneider's testimony is not subject to the collateral source and is proper to challenge the reasonableness of Williams' medical bills.

**I.     DR. SCHNEIDER'S EXPERT REPORT**

Dr. Schneider's report in this case involves an expert opinion on the reasonable value of the medical services that have been rendered to Williams and the reasonable value of the life care

---

[1] The Shepherd Center, Inc. ("Shepherd Center") - one of the nation's leading hospitals for spinal and traumatic brain injuries - provided medical services to Williams.

plans proposed by Bruce Brawner and Randall L. Thomas. The premise of his opinion is that there is a "long tradition in the U.S. medical industry of providers submitting bills and charges for services rendered, but accepting much less than those amounts in full satisfaction of those bills." (Schneider Report, ¶ 2.2). This premise is confirmed by the undisputed testimony of the Shepherd Center's representative who has more than 20 years of experience in the medical billing and collection industry. (Dennard Depo, 37-38). With this premise established, Dr. Schneider then, among other things, uses publicly available cost-to-charge data of each facility at issue to determine the reasonable value of the medical services provided based on what that facility accepts as payment for certain services.[2] By doing this, Dr. Schneider is able to opine as to the reasonable value of the services rendered based on the data available for that particular facility.

## II. UNDISPUTED TESTIMONY OF THE SHEPHERD CENTER'S RULE 30(B)(6) REPRESENTATIVE DIFFERENTIATES THIS CASE FROM *SARTIN* AND CONFIRMS DR. SCHNEIDER'S OPINIONS REGARDING WILLIAMS' MEDICAL BILLS.

### A. THE UNADJUSTED TOTAL CHARGES IS NOT AN AMOUNT THAT THE SHEPHERD CENTER EVER EXPECTS TO COLLECT AND NO PATIENT EVER PAYS THIS AMOUNT.

Ms. Dennard unequivocally testified that the hospital never expects to receive and no patient (insured or uninsured) ever pays the pre-adjustment "total charges" amount on their bills:

> BY MR. MCDADE:
>
> Q. Ms. Dennard, just a couple follow-up questions and we will let you finish out your Monday morning. I understand from Mr. Comer's questions that you've indicated there is a discount given to uninsured patients?
>
> A. Yes.

---

[2] In part, Dr. Schneider uses the medical provider's own information submitted to the United States Department of Health and Human Services ("DHHS").

Q. Do you know offhand what that discount is?

A. Yes. It's actually a 45 percent discount.

Q. To the entire bill?

A. Yes.

Q. So it sounds to me like nobody be [it] uninsured or insure[d] actually pays the full charged amount?

A. Correct.

Q. And, in fact, the hospital doesn't expect to receive the full charged amount?

MR. COMER: Object to the form.

THE WITNESS: Correct.

BY MR. MCDADE:

It's your testimony that based on your many years in the industry that this is common that medical providers bill more than -- charge more than they expect to receive?

MR. COMER: Object to the form.

THE WITNESS: Yes.

(Dennard Depo., 37-38).

This confirms that the charged amount that Williams wants to introduce as his actual damages does not represent charges for which he was ever responsible, or any party on his behalf was responsible for paying.  All patient bills are reduced, regardless of whether that patient is insured or uninsured.  This testimony further dispels any notion that medical bills are only adjusted because of negotiated rates between providers and insurance companies.

    **B.  THE TOTAL CHARGES AMOUNT IS AN AMOUNT CREATED WITH THE EXPECTATION THAT IT WILL BE REDUCED.**

Ms. Dennard readily admitted that when the Shepherd Center generates the figures that make up the total charges amount on its bills, it does so with the full expectation of that amount being reduced.

> Q. In general, is it an accurate statement to say that when the charge amount or the code amount is established that it's done so with the expectation that there will be an ultimate adjustment to that amount?
>
> MR. COMER: Object to the form.
>
> THE WITNESS: Yes.
>
> BY MR. MCDADE:
>
> Q. For instance, a line item on the master bill when that price is set it's set with the understanding that there is likely to be an adjustments [sic] downward of the total amount?
>
> MR. COMER: Object to the form.
>
> THE WITNESS: Yes.
>
> BY MR. MCDADE:
>
> Q. The hospital doesn't actually expect to recover the amount that it provides on each pay item?
>
> MR. COMER: Object to the form.
>
> THE WITNESS: Repeat the question again.
>
> BY MR. MCDADE:
>
> Q. The hospital doesn't actually expect to receive the total charge amount that it assigns to each particular service?
>
> MR. COMER: Object to the form.
>
> THE WITNESS: Correct.

(Dennard Depo, 27-28). An example of these inflated prices can be seen by reviewing some of the prices assigned to common over-the-counter medications. For instance, Williams' medical bill from the Shepherd Center indicates that a Tylenol Extra Strength 500MG tablet incurred a

charge of $8.00. (Depo Exhibit 149, p. MED-407). Common sense dictates that $8.00 for one Tylenol tablet is not a reasonable value, especially in light of the fact that a bottle of Tylenol can be purchased over-the-counter at any drug store in the country for around $8.00. Without Dr. Schneider's testimony, this type of charge will be presented to the jury – uncontested – as the reasonable value of Williams' actual damages, and it is neither reasonable nor the amount of actual damages incurred.

### III. THE COLLATERAL SOURCE RULE SHOULD NOT BE USED TO ALLOW TESTIMONY THAT IS PATENTLY FALSE.

Williams wants to use the collateral source rule as a mechanism to submit admittedly inflated medical bills to the jury as evidence of his actual damages, without Manitowoc having the benefit of contesting these bills. Allowing Williams to hide behind the collateral source rule to avoid relevant testimony regarding the value of the services rendered is contradictory to the overarching purpose of compensatory damages in the tort setting. *See Union Carbide Corp. v. Nix*, 142 So. 3d 374, 390 (Miss. 2014) ("the purpose of compensatory damages is to make the plaintiff whole"). There are two reasons that the collateral source rule does not exclude Dr. Schneider's testimony in this case because: (i) his opinions are based on common practices in the industry now supported by an actual medical provider in this case; and (ii) the Mississippi Supreme Court has recently affirmed and strengthened Manitowoc's right to challenge the reasonableness of Williams' inflated medical bills.

#### A. DR. SCHNEIDER'S OPINIONS ARE PREMISED ON COMMON MEDICAL INDUSTRY PRACTICES NOW SUPPORTED BY AN ACTUAL MEDICAL PROVIDER IN THIS CASE.

The collateral source rule has been defined in Mississippi as follows:

> [A] defendant tortfeasor is not entitled to have damages for which he is liable reduced by reason of the fact that the plaintiff has received compensation for his

>injury <u>by and through a totally independent source</u>, separate and apart from the defendant tortfeasor.

*Robinson Prop. Group, L.P. v. Mitchell*, 7 So. 3d 240, 244 (Miss. 2009) (emphasis added) (quoting *Cent. Bank of Miss. v. Butler*, 517 So. 2d 507, 511-12 (Miss. 1987)). Williams argues that subsequent write-offs to Williams' medical bills fall under the collateral source rule. Dkt. 186, p. 8 (quoting *Knox v. Ferrer*, 2008 U.S. Dist. LEXIS 102180 (S.D. Miss. Sept. 25, 2008) (citing *Brandon HMA, Inc. v. Bradshaw*, 809 So.2d 611, 618 (Miss. 2001) and *Wal-Mart v. Frierson*, 818 So. 2d 1135, 1139-40 (Miss. 2002))).[3] In addition, Williams cites to this Court's opinion in *Sartin* as grounds that Dr. Schneider's expert testimony violates the collateral source rule in this case. These arguments ignore Ms. Dennard's testimony in this case.

Unlike the cases cited by Williams, including *Sartin*, this case involves independent testimony verifying the exact premise of Dr. Schneider's opinions. The undisputed testimony of the Shepherd Center is that <u>all patients</u> (regardless of who is paying the bill) receive adjustments to their medical bill, <u>nobody ever pays</u> the full compilation of charges, and the hospital does not expect to receive that amount. (Dennard Depo, 37-38). More importantly, this type of overcharging is common practice in the medical industry. (Dennard Depo, 28). Thus, Dr. Schneider's testimony is not based on Williams getting an adjustment simply because a collateral source paid the bill, but is relevant testimony regarding the actual value of medical services rendered in light of the common medical industry practice of overcharging for services. All of this testimony can and will be put into evidence without ever discussing or referencing insurance, and whether or not Williams had insurance. Because of this, Dr. Schneider's

---

[3] Williams also cites *Brooks v. Purvis*, 70 So. 3d 1166 (Miss. Ct. App. 2000) for this same proposition, however, that case does not appear to discuss the collateral source rule in the context of medical write-offs.

testimony is not in violation of the collateral source rule, and is relevant and essential to establish the actual value of the services rendered.

### B. MISSISSIPPI LAW ALLOWS MANITOWOC TO CHALLENGE THE REASONABLENESS OF MEDICAL BILLS.

The Mississippi Supreme Court has recently confirmed that while medical bills submitted by a plaintiff create a presumption of reasonableness, that presumption can be rebutted. *Williams v. Mem'l Hosp. at Gulfport*, 2015 Miss. LEXIS 367, 1 (Miss. July 20, 2015) (*en banc*); *see also Downs v. Ackerman*, 115 So. 3d 785, 790 (Miss. 2013) (quoting *Estate of Bolden v. Williams*, 17 So. 3d 1069, 1072 (Miss. 2009)).  In the *Memorial* case, the Mississippi Supreme Court, in an *en banc* decision, reversed the trial court's decision to quash the defendant's subpoena to one of the plaintiff's medical providers. *Memorial*, 2015 Miss. LEXIS 367, 3.  The Mississippi Supreme Court allowed the defendant to obtain documents and conduct a Rule 30(b)(6) deposition of the hospital on the following categories:

> [The defendant], who claims the amounts charged by Memorial for certain of these medical expenses were unreasonable, served Memorial with a Subpoena *Duces Tecum* and Notice of 30(b)(6) Deposition, seeking testimony regarding certain billing records, the necessity of the services and/or treatment rendered, and the reasonableness of the fees charged. [The defendant] subpoenaed the following documents:
>
> 1. All fee schedules and/or rate schedules applicable on May 1, 2014 for the procedures performed on and services rendered to [the driver].
>
> 2. Any and all documentation, internal memos and/or other tangible matter in any way addressing the billing variations for the treatment rendered to [the driver], on May 1, 2014, and/or between patients who are involved in litigation and/or motor vehicular accidents as opposed to patients who are not.
>
> 3. Any and all documentation, internal memos and/or other tangible matter in any way addressing the billing variations between patients who are insured versus patients who are uninsured;
>
> 4. Any and all documentation, internal memos and/or other tangible matter in any way addressing the billing variations between patients who are insured through a

private insurer versus patients who receive Medicare and/or Medicaid benefits; and,

5. Any and all documentation relative to the deponent's charges to [the driver] for services rendered on or about May 1, 2014, . . . in relation and/or comparison to the cost for the same procedures and/or services provided by other healthcare providers throughout Harrison County, Mississippi.

*Id.* at 2.

Likewise, in this case, Manitowoc subpoenaed documents and took the Rule 30(b)(6) deposition of the Shepherd Center on the following topics:

1. Documents produced pursuant to the subpoena *duces tecum* in this matter served on or about Tuesday, September 15, 2015.

2. Micro costing data for the services rendered to John Robert Williams, Jr., date of birth ▬▬▬▬▬ ("Williams").

3. Actual pre-mark up cost of all services rendered to Williams.

4. Rates of return for all services rendered to Williams.

5. Formula(s) used by you to generate the medical bills issued for Williams.

6. Adjustments made by you to the medical bills issued for Williams.

7. Amounts billed by you for medical services for Williams.

8. Amounts paid and amounts written off by you for medical services for Williams.

9. All fee schedules and/or rate schedules in effect at the time of treatment of Williams for the medical procedures performed on and services rendered to Williams.

10. Your policies or procedures governing billing variation, write offs or adjustments for medical services rendered to Williams.

11. Your policies and procedures governing billing variation, write offs or adjustments for medical services between patients who are insured versus patients who are uninsured.

12. Your policies and procedures governing billing variation, write offs or adjustments for medical services between patients who are insured through a private insurer versus patients who receive Medicare and/or Medicaid benefits.

13. Any documentation comparing or relating charges for the medical services rendered to Williams compared to other healthcare providers in your service area.

(Deposition Subpoena to the Shepherd Center, Depo Exhibit 151).

The Mississippi Supreme Court established in *Memorial* that, in order to rebut the presumption of reasonableness of medical bills, "[the defendant] is entitled to discover relevant information regarding the reasonableness…of Memorial's charges which are claimed by the plaintiff to be recoverable damages." *Williams*, 2015 Miss. LEXIS 367, 3.[4]  Clearly, the Mississippi Supreme Court found that the categories outlined in *Memorial* met the scope of discovery requirements under Rule 26 of the Mississippi Rules of Civil Procedure, i.e. the information sought was "reasonably calculated to lead to the discovery of admissible evidence." MRCP 26 (b)(1).  This decision was reached in light of the hospital raising an objection based on, among other things, the collateral source rule. (Mem. in Support of Memorial Hosp. Mot. to Quash Subpoena, attached as Exhibit "E" and Reply in Support of Memorial Hosp. Mot to Quash Subpoena, attached as Exhibit "F").  Despite those objections, the Court ultimately allowed the discovery to proceed.

In this case, the Court has the benefit of the information obtained through the exact same type of discovery.  This discovery confirms the common medical industry practice that is the premise of Dr. Schneider's opinions. (Dennard Depo, 28).  Additionally, this testimony confirms

---

[4] Other courts have given some guidance as to reasonable value in the medical context. *See Children's Hosp. Ctr. Calif. v. Blue Cross of Calif.*, 2014 WL 2590823, 8 (Cal. Ct. App. 2014) ("reasonable value of services has been described as the 'going rate'…or fair market value, is the price that a willing buyer would pay to a willing seller, neither being under compulsion to buy or sell.") (citations omitted); *see also Hartman v. McInnis*, 996 So. 2d 704, 711 (Miss. 2007) ("'Fair market value' is defined as 'the amount at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts.'") (quoting Black's Law Dictionary 414 (6th ed. 1991)).

that the medical bills are intentionally inflated and do not represent a reasonable value, underscoring the need for Dr. Schneider's testimony.

### C. OTHER JURISDICTIONS HAVE RECOGNIZED THE NEED TO CHALLENGE INFLATED MEDICAL BILLS.

Other jurisdictions have recognized that allowing plaintiffs to claim amounts that were never expected to be paid should not be allowed to create a windfall. In *Hoffman v. 21st Century North America Insurance Company*, 2015 WL 5776131 (La. 2015), the Louisiana Supreme Court held that attorney-negotiated write-off amounts could not be presented to the jury as evidence of compensatory damages and the collateral source rule did not extend to cover such write-offs. In reaching this decision, the Court quoted a prior case involving Medicaid write-offs and stated:

> [I]n holding the Medicaid recipient is unable to collect the Medicaid 'write-off' as damages, [in Bozeman] we rejected a traditional application of the collateral source rule in favor of a rule more narrowly tailored <u>to better conform with the compensatory goal of tort recovery</u>.

*Id*. at 3 (emphasis added) (quoting *Bozeman v. State*, 879 So.2d 692, 698 (La. 2004)). Likewise, the California Supreme Court found that a patient was not entitled to recover more than the negotiated rate her private insurer had with the hospital and that such a limitation did not violate the collateral source rule. *See Howell v. Hamilton Meats & Provisions, Inc.*, 257 P.3d 1130 (Cal. 2011). In reaching this conclusion, the California Court rejected the notion that the difference in amounts was somehow a gift to the patient or insurer. *Id*. at 1139-40 ("Medical providers that agree to accept discounted payments by managed care organizations or other health insurers as full payment for a patient's care do so not as a gift to the patient or insurer.")

### **CONCLUSION**

The reality is that the total charges amount is not reflective of a reasonable value of the services provided and hospitals have no expectation of that amount being paid. Under

Mississippi law, Manitowoc has a right to contest whether the inflated amounts in medical bills are reasonable. Dr. Schneider's testimony does just that and, based on the undisputed facts <u>in this case</u>, his opinion is premised on the common practices in the industry and not an attempt to gain a benefit due to the fact that a collateral source may have paid the medical bills at issue.

Respectfully submitted, this the 24th day of November, 2015.

                    MANITOWOC CRANES, LLC

                    BY:    BALCH & BINGHAM LLP

                    BY:    <u>*/s Matthew W. McDade*</u>
                              Of Counsel

Walter H. Boone (MSB # 8651)
BALCH & BINGHAM LLP
188 East Capitol Street, Suite 1400
P.O. Box 22587
Jackson, MS  39225-2587
Telephone:  (601) 965-8179
Facsimile:  (888) 856-9542
wboone@balch.com

Matthew W. McDade (MSB # 103207)
BALCH & BINGHAM LLP
1310 Twenty Fifth Avenue
Gulfport, MS 39501
Telephone: (228) 864-9900
Facsimile: (228) 864-8221
mmcdade@balch.com

## **CERTIFICATE OF SERVICE**

I do hereby certify that I have this day served a true and correct copy of the above and foregoing pleading by the Court's electronic filing system which sent notification to the following counsel of record:

Ben F. Galloway, III
Owens, Galloway, & Myers, PLLC
P O Drawer 420
Gulfport, MS 39502-0420
bfg@owen-galloway.com

Bryan E. Comer
Desmond V. Tobias
Jason McCormick
Tobias, McCormick & Comer, LLC
1203 Dauphin Street
Mobile, AL 36604
bryan@tmclawyers.com
desi@tmclawyers.com
Jason@tmclawyers.com

This, the 24th day of November, 2015.

                                                        */s Matthew W. McDade*