IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| WANDA WILLIAMS, *Individually and as Conservator for John Robert Williams, Jr., Incapacitated* § § § § § | | PLAINTIFF |
| v. § § § | | Civil No. 1:14CV383-HSO-JCG |
| MANITOWOC CRANES, LLC § | | DEFENDANT |

### MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S [185] MOTION TO EXCLUDE DEFENDANT'S PROPOSED EXPERT JOHN SCHNEIDER

BEFORE THE COURT is the Motion to Exclude Defendant's Proposed Expert John Schneider [185] filed by Plaintiff Wanda Williams on October 29, 2015. This Motion is fully briefed. After consideration of the Motion, the record, and relevant legal authorities, and for the reasons discussed below, the Court finds that Plaintiff's Motion to Exclude Defendant's Proposed Expert John Schneider [185] should be granted.

I. BACKGROUND

A.   Factual Background

Plaintiff Wanda Williams ("Plaintiff") is the wife and duly-appointed guardian and conservator of John Robert Williams, Jr. ("Mr. Williams"). 3d Am. Compl. [118] at 1. Mr. Williams was working as a crane operator at VT Halter Marine, Inc.'s ("VTHM"), shipyard when he was severely injured on June 25, 2014.

*Id.* Plaintiff alleges that the crane Mr. Williams was operating at the time of his injury was a Manitowoc 2010 model 16000 Series crane, serial number 16001132. *Id.* at 6-7. VTHM had contracted with H&E Equipment Services ("H&E") in 2010 to purchase two Manitowoc 2010 model 16000 Series cranes. *Id.* at 6.

Plaintiff alleges that during a "tandem lift" operation, the crane Mr. Williams was operating tipped forward resulting in "counterweights 'raining down' on the Williams crane's cab slinging the cab underneath the crane." *Id.* at 12.

> The force of the impact from one or more counterweights striking the rear of the Williams crane's cab was with such force that it detached the cab from the crane body and ejected Williams from the cab causing him catastrophic permanent injuries.

*Id.* According to Plaintiff, at the time of the incident "the Williams crane was in substantially the same condition as it was when it was designed, manufactured, and placed in the stream of commerce by Manitowoc and distributed by H&E." *Id.*

B.   Procedural History

On October 9, 2014, Plaintiff filed her Complaint [1] against Defendants The Manitowoc Company, Inc.; Manitowoc Crane Companies, LLC; Manitowoc Cranes, LLC; and Cairo Marine Service, Inc., invoking this Court's diversity jurisdiction. Compl. [1] at 1-2. Plaintiff filed a First Amended Complaint [32] on December 17, 2014, and a Second Amended Complaint [47] on February 9, 2015, naming Manitowoc Cranes, LLC, and Cairo Marine Service, Inc., as Defendants. On June 16, 2015, Plaintiff filed a Third Amended Complaint [118], naming Manitowoc Cranes, LLC ("Defendant" or "Manitowoc") as the sole Defendant. The Third

Amended Complaint [118] remains the operative pleading and advances claims against Defendant for defective product, defective design, and negligence under the Mississippi Products Liability Act, Mississippi Code § 11-1-63 ("MPLA"), and common law, as well as for loss of consortium.  3d Am. Compl. [118] at 12-23.

During the course of discovery, Defendant designated John Schneider, Ph.D. ("Dr. Schneider"), as an expert in the field of health economics to proffer opinions at trial concerning the "reasonable value" of Mr. Williams' past and future medical expenses.  Dr. Schneider Report [185-1] at 1, 10.  Dr. Schneider authored an expert report dated September 9, 2015, entitled "Valuation of Medical Expenditures" [185-1], in which he opines that, while the past patient charges (hospital and professional) for Mr. Williams' treatment total $654,550.00, the "reasonable value" of these services is only $295,758.00.  *Id.* at 9-10.

To estimate Mr. Williams' future medical expenses, Dr. Schneider first calculates the reasonable value of Mr. Williams' anticipated future medical care expenses based upon a life care plan prepared by Plaintiff's life care expert, Dr. Randall Thomas ("Dr. Thomas").  *Id.* at 10.  According to Dr. Schneider, Dr. Thomas has presented two life care plan options: (1) Option 1 totaling $10,504,201.92; and (2) Option 2 totaling $7,244,037.30.  *Id.* at 11-12.  Neither option has been adjusted for inflation or discounted to net present value.  *Id.*  Dr. Schneider proposes to testify that the reasonable values of these options are $4,565,647.74 for Option 1, and $5,138,436.03 for Option 2.  *Id.*

Dr. Schneider utilized the same methodology for calculating the reasonable

-3-

value of both Mr. Williams' "future hospital and professional care" and Mr. Williams' past medical services. *Id.* at 10.

Plaintiff has filed a Motion [185] to Exclude Dr. Schneider's expert testimony in its entirety pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and Federal Rules of Evidence 403 and 702. Pl.'s Mot. [185] at 1. Plaintiff argues that Dr. Schneider's opinions "are inextricably tied to, and are clearly designed to sidestep the Collateral Source Rule," Pl.'s Mem. Br. [186] at 6, such that they should be excluded at trial, *id.* at 6-13.

Defendant responds that the testimony of one of Mr. Williams' medical providers, the Shepherd Center, confirms that "the hospital never expects to receive and no patient (insured or uninsured) ever pays the pre-adjustment 'total charges' amount on their bills . . . ." Def.'s Mem. Br. [212] at 3. According to Defendant, "[t]his testimony further dispels any notion that medical bills are only adjusted because of negotiated rates between providers and insurance companies." *Id.* at 4. Defendant argues that Plaintiff is attempting "to use the collateral source rule as a mechanism to submit admittedly inflated medical bills to the jury as evidence of [Mr. Williams'] actual damages, without Manitowoc having the benefit of contesting these bills." *Id.* at 6. Defendant asserts that

> [t]here are two reasons that the collateral source rule does not exclude Dr. Schneider's testimony in this case because: (i) his opinions are based on common practices in the industry now supported by an actual medical provider in this case; and (ii) the Mississippi Supreme Court has recently affirmed and strengthened Manitowoc's right to challenge the reasonableness of Williams' inflated medical bills.

*Id.* According to Defendant, "[t]he Mississippi Supreme Court has recently confirmed that while medical bills submitted by a plaintiff create a presumption of reasonableness, that presumption can be rebutted." *Id.* at 8 (citing *Williams v. Mem'l Hosp. at Gulfport*, No. 2015-IA-00792-SCT, 2015 Miss. LEXIS 367, 1 (Miss. July 20, 2015)).

## II.  DISCUSSION

A.   Legal Standard

Federal Rule of Evidence 702 provides that

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b)  the testimony is based on sufficient facts or data;
> (c)  the testimony is the product of reliable principles and methods; and
> (d)  the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"Under *Daubert*, Rule 702 charges trial courts to act as 'gate-keepers,' making a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (5th Cir. 2002) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993)). "In short, expert testimony is admissible only if it is both relevant and reliable." *Id.* at 244 (citing *Daubert*, 509

U.S. at 589). The party seeking to have the district court admit expert testimony bears the burden of proof. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

"The relevance prong requires the proponent to demonstrate that the expert's reasoning or methodology can be properly applied to the facts in issue." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quotation omitted). "The expert testimony must be relevant, not simply in the sense that all testimony must be relevant, Fed. R. Evid. 402, but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 529 (5th Cir. 2015) (quotation omitted).

"The reliability prong mandates that [an] expert opinion be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief." *Johnson*, 685 F.3d at 459 (quotation omitted). In conducting the reliability inquiry, the following non-exclusive list of factors should be considered:

> (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community.

*Id.* (quotation omitted); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999); *Daubert*, 509 U.S. at 593-94. "With respect to reliability, the district court has 'broad latitude' when deciding whether such testimony is reliable, and thus

admissible, as well as when deciding how to test the testimony's reliability." *Weiser-Brown Operating Co.*, 801 F.3d at 529 (citing *Kumho Tire Co.*, 526 U.S. at 141-42).

"The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Johnson*, 685 F.3d at 459 (quotation omitted). "Ultimately, the trial court must also find an adequate fit between the data and the opinion proffered." *Brown v. Ill. Cent. R. Co.*, 705 F.3d 531, 535 (5th Cir. 2013) (quotation omitted).

B. <u>Discussion</u>

Assuming that Dr. Schneider is qualified to opine on all subjects contained in his report, the Court finds that his opinions should be excluded. Plaintiff maintains that Mississippi's collateral source rule precludes the type of "reasonable value" calculations Dr. Schneider offers and that his opinions are therefore inadmissible. The Court agrees.

1. <u>Relevant Mississippi Authority</u>

In this diversity case, the Court must apply Mississippi substantive law. *See Weiser-Brown Operating Co.*, 801 F.3d at 517 (citation omitted); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Mississippi Code § 41-9-119 provides that

> [p]roof that medical, hospital, and doctor bills were paid or incurred because of any illness, disease, or injury shall be prima facie evidence that such bills so paid or incurred were necessary and reasonable.

Miss. Code Ann. § 41-9-119.

Once "a party takes the witness stand and exhibits bills for examination by

the court and testifies that said bills were incurred as a result of the injuries complained of, they become prima facie evidence that the bills so paid or incurred were necessary and reasonable." *Downs v. Ackerman*, 115 So. 3d 785, 790 (Miss. 2013) (quotation omitted; citing Miss. Code Ann. § 41-9-119). "The opposing party may then rebut the necessity and reasonableness of the bills by *proper evidence*, and if the opposing party rebuts the medical bills by *proper evidence*, the question is ultimately one for the jury." *Id.* (emphasis added) (quotation omitted). Thus, while Defendant in this case may have the right to attempt to rebut the reasonableness of Plaintiff's medical bills, it may only do so with proper evidence. It follows that evidence which is not admissible is not proper.

"In Mississippi, the collateral-source rule states that '[c]ompensation or indemnity for the loss received by plaintiff from a collateral source, wholly independent of the wrongdoer, as from insurance, cannot be set up by the [defendant] in mitigation or reduction of damages.'" *Brooks v. Purvis*, 70 So. 3d 1166, 1172 (Miss. Ct. App. 2011) (quoting *Coker v. Five-Two Taxi Serv.*, 52 So. 2d 356, 357 (Miss. 1951)). The Mississippi Supreme Court has repeatedly "held that the collateral-source rule precludes the presentation of evidence that a plaintiff has been compensated for [his] injury from some other source, such as payment from an insurance policy." *Loyacono v. Travelers Ins. Co.*, 163 So. 3d 932, 937 (Miss. 2014) (citation omitted). Of significance here is that Mississippi jurisprudence identifies insurance as one example of such a collateral source, but does not limit the collateral source rule to insurance alone.

The Mississippi Supreme Court has held that a partial payment of a medical charge by Medicaid which is accepted as payment in full by the medical provider is subject to the collateral source rule. *Brandon HMA, Inc. v. Bradshaw*, 809 So. 2d 611, 618-20 (Miss. 2001), *abrogated on other grounds by Univ. of Miss. Medical Ctr.*, 97 So. 3d 1197 (Miss. 2012). The collateral source rule therefore permits a plaintiff to introduce evidence of medical expenses even if portions of those expenses were written off by medical providers. *Id.*; *Wal-Mart Stores, Inc. v. Frierson*, 818 So. 2d 1135, 1140 (Miss. 2002).

2. Dr. Schneider's Opinions Violate the Collateral Source Rule

Although Dr. Schneider does not explicitly reference insurance or any other collateral source in his Report, his methodology for determining the reasonable value of Plaintiff's medical care effectively circumvents Mississippi's collateral source rule. To calculate Mr. Williams' past and future hospital charges, Dr. Schneider's methodology essentially converts charges to the patient to costs incurred by the applicable medical facility. Dr. Schneider Report [185-1] at 3, 5-6, 10. Dr. Schneider then adds a "conservative"[1] 5% operating margin to these adjusted costs. *Id.* at 6. Application of this methodology results in a cost-plus 5% profit figure for hospital charges, rather than reflecting the actual amount charged to Mr. Williams by the hospitals.

---

[1] According to Dr. Schneider, a 5% margin assumption "is a conservative estimate because most hospitals in the U.S. earn operating margins considerably less than 5%." Dr. Schneider Report [185-1] at 6 (citations omitted).

Dr. Schneider's methodology as applied to this particular case represents a backdoor attempt to give Defendant the benefit of any type of write-off from the actual hospital charges incurred by Mr. Williams, including write-offs due to contracts with insurance companies, without actually mentioning such collateral sources. Even though Dr. Schneider manages to avoid specific reference to insurance or other collateral sources in his Report, his methodology would nevertheless violate Mississippi's collateral source rule by effectively eliminating payments from collateral third-party sources, such as gratuitous write-offs by the hospital, from the actual medical facility charges billed to Mr. Williams.[2] In short, Dr. Schneider seeks to confer the benefit of any payment or write-off from a third party on Defendant, instead of Plaintiff. The collateral source rule as it has been interpreted by the Mississippi Supreme Court prohibits this result. *See, e.g., Frierson*, 818 So. 2d at 1140. Defendant has not shown that Dr. Schneider's opinions on the reasonable value of medical care are admissible. *See* Fed. R. Evid. 401, 402, 702(a).

3. <u>Defendant's Reliance Upon the Shepherd Center's Testimony</u>

The Rule 30(b)(6) testimony of the Shepherd Center does not alter this result. Defendant posits that the Shepherd Center, Inc.'s representative, Jennifer Dennard ("Ms. Dennard"), "unequivocally testified that the hospital never expects to receive and no patient (insured or uninsured) ever pays the pre-adjustment 'total charges'

---

[2] Dr. Schneider does not distinguish between professional and hospital charges and lumps them together into one final chart by provider. Dr. Schneider Report [185-1] at 10.

amount on their bills." Def.'s Mem. Br. [212] at 3. The Court is not persuaded that Ms. Dennard's testimony on this point somehow excuses Dr. Schneider's opinion from violating the collateral source rule, as Defendant suggests.

Mississippi's collateral source rule is not limited to insurance payments or write-offs due to providers' negotiated contracts with insurance companies. "In addition to money paid by insurance companies, gratuitous medical care as well as gratuitous gifts received by the plaintiff are considered to fall under the collateral source rule." *Knox v. Ferrer*, No. 5:07-cv-6(DCB)(JMR), 2008 WL 4446534, at *1 (S.D. Miss. Sept. 25, 2008) (citing *Brandon HMA, Inc.*, 809 So. 2d at 618; *Clary v. Global Marine, Inc.*, 369 So. 2d 507, 509 (Miss. 1979)); *see also Brandon HMA, Inc.*, 809 So. 2d at 618-20 ("a tortfeasor cannot use the moneys of others (insurance companies, gratuitous gifts, etc.) to reduce the cost of its own wrongdoing"). Defendant's argument that the collateral source rule should not bar Dr. Schneider's testimony simply because most, if not all, patients receive some form of write-off or adjustment to their medical bills, regardless of the patients' insurance coverage, is not persuasive. Such write-offs or adjustments constitute compensation received by a plaintiff "by and through a totally independent source, separate and apart from the defendant tortfeasor." *See Central Bank of Miss. v. Butler*, 517 So. 2d 507, 511-12 (Miss. 1987) (citations omitted). The collateral source rule applies here.

    4.    <u>Defendant's Reliance Upon *Williams v. Memorial Hospital*</u>

Nor does the Mississippi Supreme Court's holding in *Williams* mandate the outcome Defendant suggests. *See Williams*, 2015 Miss. LEXIS 367, at *1. In

*Williams*, a defendant in a state-court suit served a hospital with a subpoena duces tecum and notice of Rule 30(b)(6) deposition, "seeking testimony regarding certain billing records, the necessity of the services and/or treatment rendered, and the reasonableness of the fees charged." *Id.* The trial court granted the hospital's motion to quash the subpoena and deposition, and Williams appealed.

The question before the Mississippi Supreme Court pertained to a ruling on a discovery matter, not the ultimate question of whether such evidence would be admissible at a jury trial. "[T]he scope of relevant discovery is broader (often much broader) than the evidence that is ultimately admitted at trial." *MobileMedia Ideas LLC v. HTC Corp.*, No. 2:10-cv-112-JRG, 2012 WL 7783403, at \*2 (E.D. Tex. Oct. 19, 2012); *see also Hemphill v. State Farm Mut. Auto. Ins. Co.*, No. 2:13CV201-HSO-RHW, 2014 WL 4101657, at \*1 (S.D. Miss. Aug. 18, 2014) (citing *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992); *Piacenti v. Gen'l Motors Corp.*, 173 F.R.D. 221, 223-24 (N.D. Ill. 1979)). The discovery ruling in *Williams* does not control the issue currently before this Court.

The Mississippi Supreme Court did not hold that Williams was entitled to all of the discovery she sought, only that the trial court erred in quashing the subpoena and prohibiting the deposition *in toto*. *See Williams*, 2015 Miss. LEXIS 367, at \*3. The Court concluded that

> Williams is entitled to discover *relevant information* regarding the reasonableness and necessity of Memorial's charges which are claimed by the plaintiff to be recoverable damages, and the trial court erred by quashing the subpoena and prohibiting the deposition. We further find, however, that Memorial may seek by proper motion, reasonable

-12-

> restrictions, limited access and protection – through a protective order, or otherwise – with respect to any information it deems confidential or *outside the proper scope of discovery*.

*Id.* (emphasis added). The Mississippi Supreme Court left the determinations of relevance and the proper scope of discovery to the trial court in the first instance. Defendant's reliance upon *Williams* is therefore misplaced.

    5.    <u>Defendant's Reliance Upon Caselaw from Other Jurisdictions</u>

Defendant argues that "[o]ther jurisdictions have recognized that allowing plaintiffs to claim amounts that were never expected to be paid should not be allowed to create a windfall." Def.'s Mem. Br. [212] at 11. Defendant relies upon authority from Louisiana and California regarding "attorney-negotiated write-off amounts," "Medicaid write-offs," and negotiated rates between a patient's insurer and a hospital to argue that Mr. Williams should not be allowed to seek recovery of such write-offs in this case. *Id.* (citing *Hoffman v. 21st Century N. Am. Ins. Co.*, No. 2015 WL 5776131, at *3 (La. Oct. 2, 2015); *Howell v. Hamilton Meats & Provisions, Inc.*, 257 P.3d 1130, 1139-40 (Cal. 2011); *Bozeman v. State*, 879 So. 2d 692, 698 (La. 2004)).

This Court is *Erie*-bound to apply Mississippi law. In *Wal-Mart Stores, Inc. v. Frierson*, 818 So. 2d 1135 (Miss. 2002), "Wal-Mart argue[d] that the trial court erred by allowing the jury to consider evidence of medical expenses which were later written off by Frierson's medical providers pursuant to Medicare and Medicaid regulations." *Frierson*, 818 So. 2d at 1139. Wal-Mart maintained that this resulted in a windfall to Frierson. *Id.* The Mississippi Supreme Court rejected Wal-Mart's

position, holding that "a tortfeasor cannot mitigate its damages by factoring in compensation the plaintiff received from a collateral source other than the tortfeasor" and that "[t]he trial court therefore did not abuse its discretion in admitting proof of the written off portion of the medical expenses." *Id.* at 1139-40 (citing *Brandon HMA, Inc. v. Bradshaw*, 809 So. 2d 611, 618-20 (Miss. 2001)).[3] Because the Mississippi Supreme Court has spoken on this issue, the authority from other jurisdictions relied upon by Defendant is neither controlling nor persuasive.

In sum, the Court is of the opinion that Dr. Schneider has employed a methodology that violates Mississippi's collateral source rule. Defendant has not shown that Dr. Schneider's proffered opinions are relevant or reliable under *Daubert*, and Dr. Schneider's testimony will be excluded at trial. *See* Fed. R. Evid. 401, 402, 403, 702(a); *Daubert*, 509 U.S. at 591.

## III.  CONCLUSION

To the extent the Court has not addressed any of the parties' arguments, it has considered them and determined that they would not alter the result. The Court will grant Plaintiff's Motion to Exclude Defendant's Proposed Expert John Schneider [185]. John Schneider will be precluded from testifying as an expert witness at trial.

---

[3] *See also Chickaway v. United States*, No. 4:11-CV-00022-CWR-LRA, 2012 WL 3236518, at *2 n.19 (S.D. Miss. Aug. 7, 2012) ("If there is a windfall from which one is to benefit, the injured plaintiff and not the tortfeasor should receive that windfall.") (citations omitted).

**IT IS, THEREFORE, ORDERED AND ADJUDGED**, that Plaintiff's Motion to Exclude Defendant's Proposed Expert John Schneider [185] is **GRANTED**, and John Schneider is precluded from testifying as an expert witness at trial.

**SO ORDERED AND ADJUDGED**, this the 12th day of January, 2016.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE